CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

OCT 28 2009

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## HARRISONBURG DIVISION

| | |
|---|---|
| PATRICIA A. GILLMAN, | Case No. 5:08cv000114 |
| Plaintiff | REPORT AND RECOMMENDATION |
| v. | |
| MICHAEL J. ASTRUE, | By: Hon. James G. Welsh |
| Commissioner of Social Security, | U. S. Magistrate Judge |
| Defendant | |

The plaintiff, Patricia A. Gillman, brings this action challenging the final decision of the Commissioner of the Social Security Administration ('the agency") denying her claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, as amended ("the Act"), 42 U.S.C. §§ 1381 *et seq.* Jurisdiction of the court is pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

The Commissioner's Answer was filed on April 22, 2009 along with a certified copy of the administrative record ("R.___") containing the evidentiary basis for the findings and conclusions set forth in the Commissioner's final decision. By order of referral entered on April 27, 2009, this case is before the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

At the time of the administrative hearing, the plaintiff was forty-three years of age [1] with a high school education, and a vocational history of work as a convenience store clerk and manager. (R.24,78,85,87,278,280,306.) In her appeal the plaintiff contends that the administrative law judge ("ALJ") erred "in evaluating [her] subjective complaints" and in failing to provide a cognizable basis upon which to base his rejection of the treating source opinions of Omar Beiler, M.D. In his response the Commissioner argues that substantial evidence supports the administrative conclusion that the plaintiff retains the functional ability to perform a range of light [2] and sedentary [3] jobs which exist in significant numbers in the national economy. Each party has moved for summary judgment; no written request was made for oral argument, [4] and the case is now before the undersigned for a report and recommended disposition.

Based on a thorough review of the administrative record and for the reasons herein set forth, it is recommended that the plaintiff's motion for summary judgment be denied, the Commissioner's

---

[1] At this age the plaintiff is classified as a *"younger person,"* and pursuant to the agency's regulations age is generally considered not to affect seriously a younger person's ability to adjust to other work. 20 C.F.R. §§ 404.1563(c) and 416.920(c).

[2] *"Light work"* is defined in 20 C.F.R. § 404.1567(b) to involve lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category generally requires a good deal of walking or standing, or when it involves sitting most of the time it generally involves some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, an individual must have the ability to do substantially all of these activities. A job may also be considered light work if it requires "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday" with intermittent sitting. Social Security Ruling ("SSR") 83-10.

[3] *"Sedentary work"* is defined in 20 C.F.R. T 404.1567(a) to involve lifting no more than 10 pounds at a time and occasionally carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of standing and walking is often required in carrying-out job duties, and jobs are classified as sedentary if walking and standing are required occasionally and other sedentary criteria are met.

[4] Paragraph 2 of the court's Standing Order No. 2005-2 requires that the plaintiff in a Social Security case must request oral argument in writing at the time his or her brief is filed.

motion for summary judgment be granted, and an appropriate final judgment be entered affirming the Commissioner's decision denying benefits.

I.     **Standard of Review**

The court's review in this case is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that the plaintiff failed to meet the statutory conditions for entitlement to SSI. "Under the . . . Act, [a reviewing court] must uphold the factual findings of the [Commissioner], if they are supported by substantial evidence and were reached through application of the correct legal standard." *Mastro v. Apfel*, 270 F.3$^d$ 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3$^d$ 585, 589 (4th Cir. 1996)). This standard of review is more deferential than *de novo*. "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Mastro*, 270 F.3$^d$ at 176 (quoting *Laws v. Celebrezze*, 368 F.2$^d$ 640, 642 (4th Cir. 1966)). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Id.* (*quoting Craig v. Chater*, 76 F.3$^d$ at 589). Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2$^d$ 396, 397 (4th Cir. 1974). The Commissioner's conclusions of law are, however, not subject to the same deferential standard and are subject to plenary review. *See Island Creek Coal Company v. Compton*, 211 F.3$^d$ 203, 208 (4th Cir. 2000); 42 U.S.C. § 405(g).

## II. Administrative History

The record shows that plaintiff protectively filed her application on April 27, 2006, alleging a disability beginning September 26, 2005. (R.16,58-63,73.) Her claim was denied both initially and on reconsideration, and an administrative hearing on her application was held on March 6, 2007 before an ALJ. (R.16,27-37,41-43,47.) The plaintiff was present, testified, and was represented by counsel. (R.16,38-39,42-46.) Barry Hensley, a vocational witness, was also present and testified. (R.16,55-57.)

Utilizing the agency's standard sequential evaluation process, the plaintiff's claims were denied by written administrative decision dated March 27, 2007. (R.13,16-26.) *Inter alia*, the ALJ concluded that the plaintiff's chronic back strain and related musculoskeletal disorders were "severe" impairments within the meaning of the Act; however, he further concluded that these conditions, either singularly or in combination, were not of disabling severity and that she retained the functional ability to perform a range of light to sedentary work on a regular and sustained basis. (R.24.)

After the ALJ's issuance of his decision, the plaintiff made a timely request for Appeals Council review and submitted an additional treating source statement in support of her application. (R.5-12,261-271.) Her request was denied without reference to the updated medical evidence (R.5-10, and the decision of the ALJ now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981.

## III. Facts

The record in this case shows that the plaintiff sought emergency room treatment at Augusta Medical Center ("AMC") on September 26, 2005 with a complaint of bilateral low back pain after "recently" lifting several bags of pellets. (R.144-149,238,258.) At that time she gave a medical history of having had intermittent low back problems since falling from a horse some twenty-two years earlier. (R.146,328,258.) On examination she was found to exhibit some sciatica and to be in no acute distress. (*Id.*) She was given prescriptions for a pain reliever (Vicodin), a muscle relaxant (Flexeril) and an anti-inflammatory (diclofenac sodium), and it was recommended that she rest, use heat and follow-up with her physician. (R.144,146,157,238,258.)

Nine days later she sought treatment for her back strain from Dr. Omar Beiler.[5] On examination, he found only "moderately severe" muscle spasm in the low back with no evidence of any neurological deficit or any hip or knee abnormality. (R.190,221.) Following his clinical examination, Dr. Beiler referred the plaintiff for precautionary radiographic studies and for some physical therapy. (R.157-159,190,221.) X-rays taken the same day of the plaintiff's lower thoracic and lumbar spine disclosed no abnormal alignment, no medically significant vertebral compression, no disc space narrowing, no facet joint abnormalities, and only some "mild" spinal curvature. (R.196,230,256.) And the results of a November 7, 2005 lumbar MRI similarly showed no nerve root compression, no evidence of any disc herniation, no disc space narrowing, and only some "mild degenerative disc disease." (R.187,195,229,251.)

---

[5] At the administrative hearing, the plaintiff described Dr. Beiler as her "family doctor" (R.289.)

Consistent with Dr. Beiler's clinical examination, the physical therapist's intake evaluation disclosed lumbo-sacral tenderness bilaterally, a positive test for pain on the sciatic nerve bilaterally, and limited trunk rotation. (R.156.) After attending five intermittent physical therapy sessions over a three-week period in October 2005, the plaintiff was discharged as without need for further skilled physical therapy services. (R.150-156.)

An orthopaedic evaluation by Jack Otteni, M.D., in early December also failed to demonstrate any medically significant disc herniation or stenosis and only some mild degenerative disc disease. (R.160,228.) In Dr. Otteni's opinion this condition did not require any further intervention. (*Id.*)

Just one month later, in January 2006, the plaintiff returned to Dr. Beiler for treatment of her back pain, which she now attributed to helping stack wood at her home. (R.185-186.) In February, Dr. Beiler noted two "trigger points" which he thought might suggest fibromyalgia "though having somewhat of a different pattern."[6] (R.184.)

On referral by Dr. Beiler, the plaintiff was seen on March, 2006 in the Rheumatology Clinic at the University of Virginia Medical Center ("UVAMC"). At that time the plaintiff gave a history of having been unable to work to the past two months because of back pain. (R.162.) On

---

[6] A diagnosis of fibromyalgia requires satisfaction of both of the following criteria: (1) a history of widespread pain for a minimum of at least 3 months; and (2) pain in a minimum of at least 11 of 18 specific tender point sites on digital palpation. Frederick Wolfe, *et als.*, The American College of Rheumatology, *Criteria for the Classification of Fibromyalgia*; 33 Arthritis and Rheumatism 160, 171 (1990).

examination, however, she was found to be in no acute distress, to exhibit a normal affect, to exhibit a normal spinal curvature and alignment, to have a normal gait, to have full forward flexion, extension and lateral bending, to have a full a range of hip motion, to have no loss of muscle strength, to exhibit no deformities, to have no active or chronic joint inflammation, to have no trigger points which might suggest fibromyalgia, to exhibit no diagnostic evidence of any other "inflammatory or erosive process," and to have only mild "disc disease [with] no significant stenosis or herniation." (R.161-169.)

Between April 2006 and January 2007, the plaintiff was seen by Dr. Beiler on seven separate occasions. (R.178-183,210-218.) Over this nine-month period, Dr. Beiler's records suggest no medically significant adverse change in her physical condition other than some weight gain. (*E.g.,*R.178-179,181-182,217-218.) As a treatment regime for her back pain, Dr. Beiler prescribed an anti-inflammatory (Naprosyn) and continued to recommend exercise and weight loss to improve her condition. (*Id.*) Feeling that the plaintiff was experiencing reactive depression "due largely to inactivity," Dr. Beiler prescribed an anti-depressant (Wellbutrin) in November to which she responded well and her depression improved within several weeks. (R.211-213.)

In June and again in October 2006 state agency physicians reviewed the administrative file and made an assessment of her functional capacity. Based on the plaintiff's medical history, the character of her symptoms, the various diagnostic findings, her daily activities and the type of

treatment she received, both state agency reviewers concluded that the plaintiff was at least functionally able to perform light work that avoided concentrated exposure to heights, moving machinery, and more than occasional postural changes. [7] (R.171-177,197-198.)

In sharp contrast to the conclusions of the state agency reviewers, in December 2006 Dr. Beiler reported that the plaintiff lacked the functional ability to perform any work activity on a regular or sustained basis. Due to what he described as the plaintiff's "severe fibromyalgia, reactive depression, . . . [a] right knee osteophyte [and] mild lumbar disc disease," Dr. Beiler opined that she was "never" able to lift 10 pounds, "rarely able to hold her head in a static position, "rarely" able to engage in any postural activity, likely to be absent from work "at least 50%" of the time, able only to sit for a total of "about 2 hours" during a work day, able to stand/walk for a total of "about 2 hours" during a work day, able to tolerate only "low to moderate stress," and would need unscheduled breaks "several time an hour." [8] (R.206-209.)

At the hearing before the ALJ in March 2007, the plaintiff testified that she has difficulty sleeping more than about four hours at night. (R.285.) She usually arises around 4:45 a.m., showers and dresses herself without assistance, fixes breakfast her for her son (aged 12 years) and then lies-

---

[7] The occasional postural activities identified by the state agency reviewers included: climbing, balancing, stooping, kneeling, crouching and crawling. (R.173.)

[8] At the hearing before the ALJ, the vocational witness testified that an individual with the residual functional capacity outlined by Dr. Beiler would be disabled. (R.309.)

down for about one hour each morning. (R.281-284.) She helps her son daily with his homework. (R.286.) In addition to outlining her limited ability to sit, stand or walk of prolonged periods of time, the plaintiff testified that her chronic low back pain, right knee pain, neck and shoulder pain, bilateral hip pain, headaches, "problems" with her feet and depression, significantly impeded her ability to prepare meals, clean, do laundry, drive or do the grocery shopping. (R.286-302.)

At the hearing Barry Henley, Ph.D., a vocational witness, described the plaintiff's past work as a convenience store clerk as medium in exertional level, her work as a convenience store manager as skilled and medium in exertional level, and her child care work as unskilled and exertionally light. (R. 306-307.) Responding to a hypothetical question posed by the ALJ, Dr. Hensley testified that an individual with the plaintiff's vocational profile, with an ability to engage in light work activity requiring only occasional postural activities, and with moderate noticeable chronic pain, would not be able to perform any of the plaintiff's past relevant work. (R.307.) In Dr. Hensley's opinion, representative examples of jobs such an individual could perform at a light or sedentary exertional level would include: security guard, cashier (sedentary), amusement attendant, and telemarketer (sedentary). (R,307-309.)

IV.   Analysis

Citing the court to 20 C.F.R. § 404.1529 (and by implication in this case to 20 C.F.R. §

9

416.929), the plaintiff's primary contention on appeal that the ALJ erred in his assessment of her subjective complaints. Essentially, it is her contention that the ALJ "mistate[d]" her testimony concerning the extent of her pain-related difficulties with daily living activities and erroneously relied on outdated questionnaire information she had submitted concerning her daily living activities. Secondarily, the plaintiff argues that the ALJ also erred in failing to give the requisite decisional weight to the treating source opinions of Dr. Beiler.

**A.**

Although the plaintiff correctly notes that the elements of proof to be considered by the ALJ in determining the ability or inability of an individual to engage in substantial work activity include the medical opinions of treating physicians and the individual's subjective evidence of pain and disability, this argument on appeal fails to recognize that the ALJ must also consider the individual's vocational profile and, *most importantly*, the objective medical and clinical findings. *Underwood v. Ribicoff*, 298 F.2nd 850, 851-852 (4th Cir. 1962). Her argument also fails to recognize that a reviewing court is obligated to give great weight to the ALJ's findings where witness credibility is involved. *Laws v. Celebrezze*, 368 F.2nd 640, 644 (4th Cir. 1966). Additionally, her argument fails to recognize the ALJ's decisional obligation to "consider all of the evidence presented, including . . . [her] daily activities . . . ." 20 C.F.R. § 416.929(c)(3).

**B.**

To assess whether the plaintiff is in fact disabled by pain or other symptoms, the agency's regulations outline a two-step decisional process. There must first be objective medical evidence in the record to show the existence of a medical impairment that reasonably could be expected to produce the pain or symptoms alleged.[9] 20 C.F.R. § 416.929(b); Social Security Ruling ("SSR") 96-7p; *Craig v. Chater*, 76 F.3$^d$ 585, 594 (4th Cir. 1996). If, and only if, such an impairment is established, then the intensity and persistence of the pain or other subjective symptoms and the extent to which they affect an individual's ability to work must be evaluated. *Craig* at 595.

Consistent with this decisional obligation, the ALJ in the instant case reviewed and summarized the medical record in considerable detail. (R.18-21.) He considered the AMC emergency room records pertaining to the plaintiff complaints of back pain radiating into her hips and her history of intermittent back pain for twenty-two years. He reviewed the office notes and records of Dr. Beiler reflecting his treatment of the plaintiff's complaints of back pain and depression since September 27, 2005. He outlined the results of Dr. Jack Otteni's December 2005 consultive orthopaedic examination, Similarly, he outlined the results of Dr. Ashok Jacob's consultive rheumatology examination in March 2006 at UVAMC.

Concluding that the plaintiff's musculoskeletal condition could be reasonably expected to produce pain and discomfort, the ALJ then proceeded to consider whether the plaintiff's statements

---

[9] The burden of proof rests with the plaintiff to demonstrate that she in fact has such a medically determinable impairment. *Heckler v. Campbell*, 461 U.S. 458, 460 (1983).

about the intensity, persistence and limiting effects of her pain were substantiated by objective medical evidence. (R.22-24.) Based on this consideration of the entire record, the ALJ concluded that the plaintiff's statements concerning the severity of her symptoms and attendant functional limitations were "not fully supported by the evidence of record and [did] no rise to the level of disability under the . . . Act." (R.22.)

In reaching this step-two conclusion, the ALJ noted the plaintiff's testimony concerning her chronic low back pain, shoulder discomfort, right knee pain, bilateral heel pain, headaches, difficulty bending or squatting, inability to lift more than a gallon of milk, inability to stand longer than five to ten minutes, difficulty sitting longer than about five minutes, inability to walk farther than one block, and "rather limited daily activities." (R.22.) Referencing the relevant parts of the record, the ALJ noted that these complaints of extreme functional limitations were inconsistent with the routine and conservative nature of her relevant medical treatment, the absence of any significant finding either by the orthopaedist in December 2005 or by the rheumatololgist in March 2006, the absence of any need for ongoing medical care by specialists, her unilateral decision to discontinue the use of prescription pain relievers, the "minimal objective medical findings" in the record, and the scope of activities "acknowledged"by her at the hearing. (R.23.)

Having, therefore, made an adequate threshold finding pursuant to *Craig* and SSR 96-7p and similarly having made the appropriate multi-factor second-step consideration under 20 C.F.R. §

416.929(c)(4) concerning the plaintiff's subjective complaints, the ALJ's assessment of the plaintiff's pain and credibility is supported by substantial evidence. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).

### C.

The plaintiff's contention on appeal that the ALJ erred in failing to give the requisite decisional weight to the treating source opinions of Dr. Beiler is equally without merit. Although she asserts that the ALJ provided no basis for his rejection of Dr. Beiler's December 2006 assessment, the ALJ in fact stated unequivocally that the various "extreme limitations" reported by Dr. Beiler "lack[ed] support and consistency with the other evidence in the record, including Dr. Beiler's own treatment records." (R.23-24.) *Inter alia*, the ALJ also reasonably concluded that "repeated physical examinations had failed to reveal" any significant loss of strength, sensation, or range of motion, as would be expected with the extreme limitations reported [by Dr. Beiler], and the ALJ additionally noted that such limitations were inconsistent with the examination findings of the orthopaedist and the rheumatologist. (R.24.)

Although not separately discussed by the ALJ, it merits being noted that Dr. Beiler's December 2006 assessment is based in large measure of his statement that the plaintiff has *fibromyalgia*. That diagnostic assertion, however, is factually inconsistent with the reported findings

13

on multiple physical examinations, including those of Dr. Beiler himself (R.178-183,184,190,210-218,221).

Contrary to the plaintiff's allegation, the ALJ's discount of Dr. Beiler's opinion was factually supported in the decision ad properly set forth his reasons for not according significant decisional weight to Dr. Beiler's opinion. This finding is, therefore, supported by substantial evidence and is consistent with the factors set forth in 20 C.F.R. § 416.927(d).(3)-(5). [10]

### E.

As set forth in detail in Section I above, it is not the province of this court to make the disability determination. This court's role is limited to determining whether the Commissioner's final decision is supported by substantial evidence. In this case, substantial evidence supports that decision. The recommendation that the decision of the Commission should be affirmed, however, is not intended to suggest in any way that the plaintiff in this case is free of pain or does not have significant impairments. The objective medical evidence simply fails to demonstrate the existence of a condition that could be reasonably expected to result in total disability within the meaning of the Social Security Act. Moreover, based on a review of the full administrative record compels a finding that it sufficiently demonstrates that the plaintiff's claim and her evidence, both objective and subjective, were properly considered and were fully and fairly assessed by the ALJ.

---

[10] These factors include: opinion (3) supportability, (4) consistency, and (5) specialization.

## IV. Proposed Findings of Fact

As supplemented by the above summary and analysis and on the basis of a careful examination of the full administrative record, the undersigned submits the following formal findings, conclusions and recommendations:

1. All facets of the Commissioner's final decision are supported by substantial evidence;

2. Substantial evidence supports the finding that the plaintiff's condition neither met nor medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appx. 1;

3. The ALJ did not err in his review of the plaintiff's impairments and associated functional limitations;

4. The ALJ's assessment of the plaintiff's subjective evidence was supported by substantial evidence and was made in accordance with the applicable agency regulations;

5. Substantial evidence supports the finding that through the date the ALJ's decision, the plaintiff retained the functional ability to perform a range of light work;

6. The medical information and opinions of Dr. Beiler were appropriately considered and weighed at all relevant decisional steps;

7. The plaintiff has not met her burden of proving her disability on or before the date of the ALJ's decision; and

8. The final decision of the Commissioner denying the plaintiff's SSI applciation should be affirmed.

## V. Recommended Disposition

For the foregoing reasons, it is RECOMMENDED that an order be entered AFFIRMING the final decision of the Commissioner, GRANTING SUMMARY JUDGMENT to the defendant, DENYING plaintiff's claim, and DISMISSING this case from the docket of the court.

The clerk is directed to transmit the record in this case immediately to the presiding United States district judge and to transmit a copy of this Report and Recommendation to all counsel of record.

## VI.    Notice to the Parties

Both sides are reminded that, pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, they are entitled to note objections, if any they may have, to this Report and Recommendation within ten (10) days hereof. **Any adjudication of fact or conclusion of law rendered herein by the undersigned to which an objection is not specifically made within the period prescribed by law may become conclusive upon the parties**. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitals or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objections.

DATED: 28th day of October 2009.

/s/ *James G. Welsh*  
United States Magistrate Judge